Good afternoon, Your Honor. The first case this afternoon is number 5-20-0128, Holzknecht et al. versus Litchfield Union St. Properties et al. Arguing for the appellant, Litchfield Union St. Properties, LLC, is Rick Ferticchio. Arguing for the appellees, Franklin Reed of Holzknecht is Warren Benning. Each side will have up to 15 minutes for their argument. The appellant will also have five minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I will hit the gavel. And please remember, only the clerk is permitted to record these proceedings today. Good afternoon, gentlemen. Afternoon. This is 5-20-0128. Mr. Ferticchio, are you ready to proceed? I am, Your Honor. Then go right ahead. Thank you. Could it please the court, counsel? My name is Rick Ferticchio. I represent Litchfield Union St. Properties and Litchfield State St. Properties in these two consolidated proceedings that were tried out of the Circuit Court of Montgomery County as case numbers 16-CH-43 and 18-CH-16. We'd like to review with the court the party's position and the relief sought in the two actions which we believe is helpful in understanding the only issue that is pending, one on what is basically this limited appeal. There were two proceedings. The first one was 2016-CH-43. The two corporate parties, being Litchfield Union St. and Litchfield State St., filed an action seeking an injunction by, excuse me, an easement by prescription pertaining to some vacant property owned by the Appalese, Rita and Frank Holzknecht. In that proceeding, there was an evidentiary hearing held on a request for a preliminary injunction, and it was denied, and the court's order indicates the denial was based upon the contention that the 20-year period to have a prescription had been interrupted by intervening bankruptcies. In case number 2018-CH was filed by the Holzknechts against the defendant Litchfield Union St. Properties and various tenants on the properties seeking an injunctive order related to use of some open space behind the buildings, requested removal of various signs and doorways, and a claim for damages. An affirmative defense was filed by Litchfield Union St. Properties claiming the establishment of a public thoroughway or right-of-way through the open property. After the trial, excuse me, during the time that the trial evidence had closed but prior to submission of post-trial briefs, rules to show cause were filed by both parties, direction to actions taken. The trial court issued a consolidated order on September 30th, 2019, and in that part of that order established that there was a 10-foot easement for alleyway purposes along what would be the western junction of the buildings of the Union St. Property, Litchfield Union St. Properties on the edge of their property and the open property owned by the Apple Leagues. Post-trial motions were again filed by both parties. A clarification order was entered, but that order did not discuss the only issue that's raised in this appeal as to whether the court failed in entering an order to remove a guardrail that had been installed by the Host Connects after the initial proceeding, the close of the evidence. The significant facts in this matter are generally undisputed. There's an alleyway that has been established by an easement, undisputed, and the issue is whether the court, the court erred in failing to order the removal of a guardrail that was a step that was installed by the Host Connects on the south end of that easement after the close of the evidence, which were the subject of the rules to show cause. Does the guardrail block the easement? Well, the guardrail stops the easement at the very edge. It's installed at the very edge. An easement for alleyway purposes, I can't, it's on part of the easement. It has to be located on the property or it's located on the property of the city adjoining parking lot, the city of Litchfield adjoining parking lot. It's not, it's located on this property. So it does stop. Is there a survey that shows that? There was as part of the record, Your Honor, as to where the easement was located. As far as the guardrail, the problem with that is the guardrail was not installed until after the close of the evidence. The parties closed the evidence after a two-day trial. And during, and the court granted the parties, the attorneys time to file post-trial brief. During that time, action was taken by both parties. First, my clients through its representatives went onto the property and started removing some parking bellards. They're the yellow posts that you don't back into a building that had been installed on the property prior to the time was owned. But there was evidence adduced at the trial, the cost to remove those because they were on the easement. My client didn't like the cost of the removal submitted to evidence. So he did it himself or he had a help in doing it himself. Although he was stopped before complete removal. Once he did that- I'm a little confused. These are posts between the building and the easement or on the easement? They would be posts that were installed right where the easement was. Now the easement, Your Honor, was granted in 1909 and no one really knew it was there until this proceeding was filed. One of the facts that came out is that when the Host Connects acquired the property from their daughter and their building, by the way, is to the west and then there's this open space, they actually, under the evidence, went to the city of Litchfield and said, hey, you need to come in and fix this alleyway. There's all kinds of potholes that needs to be repaired. And they were told then by the city of Litchfield, it's not an alleyway. You own all the way up to the edge of the building. And under the survey, and Your Honor, there's a plat survey at, Your Honors, at A9 of our appendix that lays out where these buildings are. And it also lays out that on the very east side of the Host Connect property, adjoining the west side of the Litchfield Union Street and Litchfield Main Street properties, there's a 10-foot easement that had been granted in 1909. These ballards that my client tried to remove were actually located on the easement. At that time, whether in retaliation thereof or why, the Host Connect, again, after the close of the trial- No, I thought you said with the close of the evidence, there was no judgment yet. No judgment yet. Yes, Your Honor, no judgment. So the trial has not ended. No, the trial, after the close of the evidence, Your Honor, but the trial had not yet entered, no order had been entered. The Host Connect installed a guardrail, a guardrail, typical guardrail that you see in those pictures in the record that stops when you are walking, would be north to south along this 132-foot, 10-foot-wide easement, 132 feet long. The guardrail stopped right at the south end. So you couldn't go then from the property on the easement to the next property, which was a public parking lot owned by the city of Litchfield that was often used for my client's employees and general public to park their vehicles. Now they had to go all the way around the block. The buildings had to go south and then east, and then to get to the, they couldn't cross the guardrail. They could walk over the guardrail, I suppose, but in our opinion, the guardrail was placed on the easement and encroached it. Now, the 2016-43 case, the reason that a prescriptive easement wasn't granted is because they had established that the two corporations had filed bankruptcy, and according to the court's interpretation, based on another case related to adverse possession, said that broke the 20 years. We don't agree with that, but that was never appealed. The actions of the parties in installing these guardrails and in digging up the ballards led to both parties filing rules to show cause with the trial court and saying to the trial court, stop them, stop them from moving the ballards, make them take the guardrail down. The trial court held a hearing on the rule to show cause, didn't take any action whatsoever. On September 30th, 2019, the trial court entered an order, and that order did grant a lot of the relief requested in the case filed by the Host Connects. It denied the relief requested of the prescriptive easement filed by the corporations, again, relying on the same theory of an intervening bankruptcy, but did not address the issue of the guardrails. I'm a little confused also. Was there an abandonment by the city of LA? They wouldn't maintain it? No, sir, there was no alleyway. There was no city alleyway ever established there. I thought you said there were ditches or potholes. Well, there were, because this open area had been used as an alleyway. People came- The city had not maintained it, is that correct? Well, the city didn't maintain it because it wasn't a platted alleyway. It was just a driveway that had been used, and that was one of the contentions that we filed in the case establishing an affirmative defense that there had been a public roadway established. That relief was granted, but there's no question that there was this open area that had access from Union Street to the north all the way to and through the Litchfield public parking lot, but it wasn't city property, and so the city said, we can't fix it. It's not owned by us. That was the first time that the Holst Connects discovered that their property was actually the alleyway that they owned, what we'd all would have called an alleyway. In the trial, no, excuse me, that post-trial motions were filed by both parties, and a clarification order was entered, but the clarification order, again, did not discuss as to whether that guardrail should be removed. Let me say for the evidence purposes that there was a guardrail installed not in the exact same location on the boundary previously based on the testimony of the parties, but nobody knew when it was installed, but the evidence was that when the daughter owned the property, she asked the city of Litchfield to remove it even though there's no evidence that it was owned by the city of Litchfield. It was just a guardrail that had been there for an unknown time and not removed, which is contrary to a suggestion that, well, the easement was then terminated because there's no evidence that it had been there for 20 years. The testimony, the exhibits, mean exhibit five of the Hulse Connect, through their witness, established this alleyway was granted for alleyway purposes, excuse me, this easement, and it's exhibit five and a copy of that easement is located at A9 of our exhibit. 132 feet, stretching from the north end of the Hulse Connect property to the junction with the Litchfield City property. It's a 10 foot easement, the guardrail blocks that easement. Now, one of the arguments raised by the defendants and perhaps their biggest argument, if you look at their brief, they're by the Hulse Connects, they are the Appleys in this case, was, well, public people are walking, they're parking in the city parking lot and walking across our property. So we wanna put the guardrail up to stop them, except for the fact that when they bought the property, they had constructive notice that this easement was there, and they can't block the easement that was granted to the predecessor of my client. My client owned the property that received the easement back in 2000, excuse me, 1909. So we think the actions of the Hulse Connects in putting up the guardrail, encroached on the easement, and as a result thereof, it should have been ordered taken down. The issues raised by the Appleys, and we can get into those more, but one of the biggest one was, well, this is the only way we can enforce our easement. They can force the easement in any manner they want, but they can't encroach on an easement granted to us. They can't say, well, you guys can go there, but we want other people not to, and we just can't not have a guardrail. We can't go through our entire easement if the guardrail was there. Now, I'm gonna ask another question, again, about this guardrail. Was there a guardrail before the second guardrail was put in or was that, and was that the original, when was the original guardrail taken down and the second one put up? Your Honor, the answer to some of this, the evidence doesn't show. There was a guardrail. It wasn't in the same position. It didn't block the entire 10-foot easement, the width of the 10 feet, but there was a guardrail there. We don't know when it was put in, by who. The evidence didn't establish that, and what the evidence established that under a three-year period when the daughter owned the property before they sold it to Mr. and Mrs. Holtz-Konek, who own it now, the Appleys, she went to the city of Litchfield and asked to be taken down, and it was taken down. Now, why the city of Litchfield would have taken it down, I don't know, but that's what the evidence was. So how long was the guardrail there, the first one? No one knows. Who put it there? No one knows. One question. You have indicated the standard of review is independent review. What does that mean? Well, Your Honor, what that means is, and it's almost this, that's the terminology we had in the cases that we cited to you, Your Honor. In our opinion, it's similar to the NOVO because the court didn't rule on this. The trial court didn't say that guardrail need to stay or that guardrail need to go. And if it did, then I think it would be a review of whether it was a manifest against the manifest way of the evidence. But the trial court didn't review, didn't speak to taking that guardrail down, although it was raised in a rule that shall cause filed in this proceeding and raised in the post-trial motion. So we think the court has independent review, meaning you're not bound by the trial court because trial court didn't review it, didn't speak to this issue. I think my time has expired. I'll answer any other questions. Otherwise we reserve our right for rebuttal. Any questions? No. Mr. Benning. Yes, may it please the court. My name is Warren Benning. I represent the appellees, Rita and Frank Colts-Konek. I found that there was something that was said by the appellant in regards that there was a finding that there was a public easement established and that was not the case. There was, the lower court did not find that there was a public easement established. So I wanted to state that right away. But I also wanna say that this is a case whereby we have a motion for rule of show cause that deals solely with the guardrails and an issue as to safety that was ruled upon by the court. The appellant wants to make this issue that, oh, the guardrails were never mentioned. The lower court said, yeah, that we're not going to allow this motion for rule of show cause to have anything to do with this. We're going to just say no. We're gonna say no to it. And they did. And then after that, the post-trial motions or post-trial briefs were filed. And then we have the motion to reconsider. The motion to reconsider basically states that there is an exhibit five and somehow it connects with paragraph four of the order, but we're not sure exactly how that is. My point in saying that is, is that there is no authority cited in the motion to reconsider, nor was there any authority cited in the motion for rule of show cause. And so therefore to come back and say that there was some type of misapplication to law, I think is really stretching it. There was no law that was mentioned in the motion to reconsider that was clearly stated as being misapplied. As we go forward into the appellant's brief, it does mention exhibit five, but does he ever say again about the paragraph four and how that was misapplied? That argument was not brought up in the appellant's brief, nor was it brought up in regards to the reply brief. So in that regard, that's never been understood. How is this misapplied? For that reason, I am attacking that motion to reconsider as being improper and not tolling the appeal as far as preserving the appeal. What I'm saying is that with the motion to reconsider, there has to be a reason for it. And we know that it's got to attack the judgment. I do cite that case. But at the same time, we look at it as bringing to the court new evidence. We're looking at a new law that needs to be brought to the court or that there was an error as far as the misapplication. We don't have that here because even though he wants to say it in his motion to reconsider, it was not there. Nor do we see anything that shows clearly what that argument was when we get into the brief or into the reply brief. Now, what we see here is that the appellant wants to make a deal that, oh, well, there was this situation where in between the times of the hearing of the evidence and then the motion for a rule to show cause was filed, and then there was a ruling, the ruling did not apply to the guardrail. Well, I disagree with that. When the court said no to the motion for rule to show cause, that dealt with the guardrails. And I also disagree in regards to what he said that this is vacant land, that this is a parking lot area. And also, I don't see anything cited in his brief where he says that the Polk's Connects went to the city of Litchfield and that this was all an agreement as far as how the guardrail was taken down. The appellant uses Exhibit 1 to show that somehow the guardrail did not go all the way to the east. As I'm looking at that Exhibit 1, the guardrail does go all the way to the east, at least from my Exhibit 1. I'm not sure which one he's referring to because he doesn't really specify which Exhibit 1 that is. So in that regard, your honors, I'm also doubling back and saying, if you are to look at this, it's basically abuse of discretion and not de novo because we do have a misapplication. Going forward, your honors, I look at our next issue in regards that the evidence supports the trial court's ruling to not remove the guardrails. There was evidence presented as to the guardrails. And we had a witness, Mr. Ernst, testify that, as far as he knew, had been there for some time and he was using a date of perhaps 1992 or 94. We had Chris Hantlett, who's an attorney in Litchfield. He was talking about how he'd been there for some time. Carrie Holtzknecht, which is the former owner of this property, talking about the guardrails being there, and she was the one to remove them in order to have the parking lot area accessible for having furniture moved into them. And then we also hear about the Carl Nail, the surveyor, who also was talking about the boundary lines and so forth. So the guardrail essentially is to keep people from coming and going through the easement to the parking lot. That is correct, yes. Well, what's the purpose of the easement then if you can't get to the parking lot? Well, your honors, the original purpose of the easement is that there was, if I may, there was a building on, as I would say, my left, which is owned by the Holtzknecht. Not originally, but now it is. And then there's the buildings on the left, on the right, I'm sorry, that are owned by the appellants. There are two lots on the right. There's a lot one and a lot two that you hear a lot about in regards to our briefs. Lot one was not granted the easement. Lot two, which is behind lot one, it was granted that easement. The purpose of the easement, it appears, was to allow lot two people to have access to the street in front of lot one. So it has no bearing in regards that the south entrance is blocked as far as with that easement because the evidence doesn't show that when the property, the easement was acquired by the predecessors entitled of the appellants, that there was an actual south entrance. That parking lot, Litchfield Park- What about the fact that there's a deed indicating that there's an easement going back to 1909? Yes. Yes, Your Honor. And that easement, though, does not specify anything more that there is an easement. However, when the trial judge looked at this easement, he said, oh, this applies to lot two, not to lot one. And as a result, he said, oh, this easement can only be used by people of lot two. So that easement is in the record? The order, yes, it is, Your Honor. The easement is exhibit five. But the orders that interpret that easement are the September 30th, 2019 order, which sets out the restrictions as to how that easement is to be used. And as we look at, as I said before, the two buildings with the property, the parking lot in between, lot two had to have access somehow at some point to get to the road in front of lot one. And that appears to be the purpose of lot one, or of the easement itself. But at the same time, if we're looking at trying to protect the interest of the property owners who are the Holtz Connects of this lot, this parking lot area, we claim that as a result of the attempt by the appellant, certainly to show that there was a public easement, that it makes sense that it be closed off. We also claim that it is for safety purposes, for even the appellants. If we have cars running up and down there, that is going to be a deterrence for their use as well. And let's talk about where that guardrail is. That guardrail is abutting the south end of that easement. It is not obstructing anything as to the ability to get into the buildings as far as coming from the north side. It is not obstructing the use of the lot two door in regards to getting to the north side. And the easement itself actually extends beyond those buildings, where all we're talking about is no building connected with lot one and two being affected by the closing off of the guardrails. The only thing is that they say, oh, it's either all or nothing. And they claim in their reply brief, an alley has two exits. Well, where's the law on that? I haven't seen, they don't cite any law in regards to an alley having two exits, but that is what the emphasis here of their argument. Have they presented anything to show that? No, they have not. Is the acceptance or the reliance on the court in regards to setting out how this easement is to be used logical? Yes, if we look at it, that it is to be used for the north side entrance as far as a street that is on the north side of lot one. And as I said, we do have testimony as to the guardrail being there for some time. The guardrails, I disagree with the appellant that he claims that they did not cover over the east entrance, but even as exhibit one shows that apparently they did, and that it was put back in the place that it had been before. So the purpose of the easement, I believe was to grant access for lot two to go to the north side, but as far as the parking lot there, that's a new situation. That parking lot had not been there at the time that the easement had, as far as we know, was created. There's- Counselor, let me ask you this. If someone comes in, I believe from the north side and drives down the easement, how can they get, how then can they get out? If the other end is blocked off and there's no other way to get around or out of the easement, is there room for them to turn around? How do they get back out? Yes, they can turn around. There's quite a bit of room there actually to do a U-turn and get out. And for the most part, it had been used for walking purposes and not for vehicles for some time, Your Honor. Okay.  Yes, that was an exception, Your Honor, and the reason that she had to do it was that the parking lot did not allow the semis to come in at a proper angle as far as getting into the appropriate area to unload. So there were some reasons why the, you're right, that the guardrails were removed, but at the same time, we're claiming that there was no reason that they could not be replaced if they had been there for some time and temporarily removed just for the purposes of that business. And as we look at the case involving, or some of the other cases that I cite, we feel that right now, the appellant is trying to increase the burden on my clients as far as being the servant tenement and trying to enhance his access to the easement without proving that he actually has that ability to do that. He didn't prove that in the trial or even as to the motion for contempt. All we saw was that the testimony that it was there, we didn't hear anything from the appellant that as far as how this was restricting, no testimony was presented, at least nothing has been cited in his brief or in his reply brief as to the appellant testifying, well, this really affects my use of the easement. Okay, well, if you don't have that, then we're left with what the guardrail was there. The guardrail was there for the purpose of keeping out traffic that it had been there for some time and that it was there for the purpose of preserving the interest of my clients as to the right to use their property. Having traffic going through there substantially would affect the use of my client's, use of that property as a parking lot. Any questions? No. Your Honor, I would conclude by saying, I request that the appellant's relief be denied and that the, as far as the ruling on the motion for rule of show cause, be allowed to stand. Thank you very much. Thank you, Mr. Benning. Articcio, you ready for a rebuttal? Yes, sir. Go right ahead. First, the arguments that counsel made saying, well, I know if you look at the evidence that the testimony at the trial, there was no testimony as to, well, this guardrail blocks our use of easement. One reason for that is because at the trial, the guardrail wasn't up. They only put it up after the close of the evidence. We made that argument and cited it in our rule of show cause, and I disagree with counsel. The record will establish, and your Honor will look at the record, that at the hearing on the motion for rule of show cause, the court simply said, I'm not taking any action right now. And he didn't. Does that mean you couldn't have incorporated into his order? As a matter of fact, if you look at the post-trial briefs, we incorporated it into our post-trial brief. Hey, you need to tell him to take that guardrail down. Now, counsel says, well, this easement was granted so that people from lot two could have access to the roadway at lot one. Now, where does he get that? The answer is, he doesn't. He's making it up. If your Honors will look at exhibit five, and it's in the appendix at A8, it simply says the right to use for alleyway purposes. That's why the guardrail was there. Excuse me. That's why the easement is there, for alley purposes. To say, well, no, it was just because lot people from lot two had to go north to lot one. They didn't need to go south. He's making that up. There's no evidence to that effect. He refers to, what about paragraph four? Paragraph four of the order simply says, defendants shall not use plaintiff's easement to enter or exit lot one. Only defendant Litchfield Union Street properties and their entities shall be allowed to use the easement associated with lot two. It was granted to those that owned lot two, but it doesn't say, so you can go north. It's an easement for alley purposes. You can go north, you can go south. Once they put up that guardrail, again, after the close of all the evidence, it encroached upon the easement right granted to my client, whose predecessor had received easement, but the client is Litchfield Union Street properties. Counsel cites, well, there was an easement there. I think he's trying to argue what the easement's been blocked off for a sufficient amount of time. Takes 20 years. Counsel keeps on citing, well, the evidence was it was there for some time. A couple of people said it was there for some time. Some time isn't the standard. 20 years is a standard if you're gonna block off an easement that was granted. It was granted. There was no evidence in a record to show it had been there for 20 years. A guardrail had been there to block it off for 20 years and then end a distinguished easement. There was no action taken by the trial court on the request and the rule shall cause, incorporated into the post-trial brief, and there was no action in the clarification order. The trial court did not act on the guardrail. But let's just say that counsel is right that, well, by not granting it, it acted on. It didn't say that. Trial court did not. But let's just say that counsel's right, all right? That simply means now the standard of review is, well, it's against the manifest way of the evidence. The only evidence in this case is that the guardrail encroaches use of the alley easement to go to the south. Well, we don't think that's what the intent was, that they didn't need to go to the south. Counsel's making that up. There's no evidence to that effect. Look at Exhibit 5, it's AA to the appendix. It doesn't tell you, well, this is being granted to the owner of what now is Lot 2 so it could go north across to the street in Lot 1. Doesn't say that at all. He's making that up. The court didn't act. If it did act, the standard still couldn't be met. The guardrail wasn't there for 20 years and nobody knows how long it was there prior to the time it was taken down by the prior owner. And the purpose of this easement was for alley purposes. When counsel suggests anything else, he's just making that up. The court failed to order an encroachment on the easement to be taken down. The facts are it does encroach easement, undisputed. It needs to be taken down. We asked the court to enter an order on this limited appeal that the guardrail should be taken down. Unless there's any questions, I appreciate the opportunity to appear before the court. Well, thank you, counsel. Obviously, the matter will be taken under advisement and a disposition will be entered in due course. Thank you all. Thank you, Your Honor. Thank you, Your Honor.